## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUAN DUARTE, BETSY DUARTE, N.D., an Infant, by Parents and Natural Guardians JUAN DUARTE and BETSY DUARTE, LEROY NOBLES and BETTY NOBLES, on behalf of Themselves and all others Similarly Situated,<br><br>    Plaintiffs,<br>v.<br><br>UNITED STATES METALS REFINING COMPANY; FREEPORT MINERALS CORPORATION and AMAX REALTY DEVELOPMENT, INC.,<br><br>    Defendants. | Civil Action No.: 2:17-cv-01624 (ES)(SCM) |

### AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs, by their attorneys, German Rubenstein LLP, Vlasac & Shmaruk LLC and Nidel & Nace PLLC, bring this Civil Action on their own behalf and on behalf of the Classes they seek to represent, to obtain damages, both compensatory and punitive, injunctive relief, and costs of suit from the named Defendants, and complain and allege, in this Class Action Complaint, as follows:

### I.        INTRODUCTION

1.        This is a Civil Action to secure redress from the Defendants for damages suffered by Plaintiffs as a result of the Defendants' wrongful emission, release, discharge, handling, storage, transportation, processing, disposal and failure to remediate toxic and hazardous waste, which was generated as a by-product of their smelting, processing, refining, casting, production and recovery operations in Carteret, New Jersey, and/or their failure to test, identify, disclose,

1

remove and/or properly remediate contamination and toxic substances related to such operations from Plaintiffs' properties.

2.      Plaintiffs and their properties have been exposed to toxic and hazardous substances released as a result of Defendants' conduct associated with their operations of a smelter located on Middlesex Avenue in the Borough of Carteret, Middlesex County, New Jersey ("Defendants' Smelter") and/or the testing and remediation of Smelter Contaminants, as described below.

3.      Defendants processed, created, refined, generated, emitted, released, discharged, handled, stored, transported, disposed and failed to properly test for, disclose the presence of, and/or remediate large quantities of toxic and hazardous materials including arsenic, benzene, cadmium, chromium, copper, dioxins, furans, iron, lead, nickel, selenium, tellurium, tin, zinc and other toxic metals, volatile organic compounds ("VOCs") and materials (collectively, "Smelter Contaminants").

4.      These toxic and hazardous materials scattered through the atmosphere so that Plaintiffs, Class Members and their properties in Carteret were, and continue to be, exposed to toxic and hazardous materials from Defendants' Smelter.

5.      Beginning in approximately the 2016-17 timeframe Defendants notified Plaintiffs and residents living in the proposed Class Area, for the first time, that soil at residential properties surrounding Defendants' Smelter may contain lead, arsenic and/or copper associated with Defendants' operations at concentrations above safe levels, requiring excavation and removal.  Prior to this time, Plaintiffs were unaware, and had no basis to be aware, of the

existence of lead, arsenic and copper or any other Smelter Contaminants and for the need for this contamination to be excavated and removed from their properties.

6.     The Smelter Contaminants have been and continue to be a source of hazardous substance exposures on and within Plaintiffs' properties and persons in Carteret.

7.     Wind, erosion, fugitive emissions and other airborne and human releases of the Smelter Contaminants have caused these toxic and hazardous substances to spread within Carteret.  The toxic and hazardous substances were, and continue to be, transported by wind, atmospheric deposition and other natural and human processes onto and into Plaintiffs' homes, properties and persons.

8.     As a result of Defendants' release, discharge, handling, storage, transportation, processing, disposal and failure to identify and remediate Smelter Contaminants, Plaintiffs are at an increased risk of developing serious latent disease and other adverse medical conditions.

9.     Large amounts of Defendants' Smelter Contaminants remain today in Carteret and the full nature and extent of the contamination has not been adequately delineated by the Defendants.

10.     The presence of Smelter Contaminants presently impacts Plaintiffs, causes a diminution in their property values, is a blight on Plaintiffs' community, causes annoyance and inconvenience and deprives Plaintiffs of their free use and enjoyment of their property, including, but not limited to, the inability to fully use, enjoy and recreate on their outdoor spaces, freely perform certain work and repairs on their property; and requires that their property be dug up, excavated (while being contained) and otherwise disrupted, causing unreasonable and significant inconvenience and disturbance.  Plaintiffs additionally suffer fear of adverse health

effects, including cancer and other serious illness, including childhood mental, physical, developmental and cognitive harms and other health serious issues as a result of the presence of Smelter Contaminants on their properties.

11.    Despite their knowledge of the dangers associated with their past and ongoing conduct, Defendants failed to properly determine the true nature and extent of their Smelter Contaminants within the community or to provide Plaintiffs with proper notice or warning of the true nature and extent of these toxic substances.  Defendants did not disclose the full extent of their historic operations in Carteret and did not fully delineate the extent of the contamination in the Class Area.

12.    Because Defendants concealed the dangers associated with and attendant to their conduct, Plaintiffs did not know, nor could they have known, of the presence, nature and extent of Smelter Contaminants.

13.    Defendants' concealment of these dangers and resulting contamination of the community continues to this day. Defendants have actively engaged in a campaign of concealment and misinformation concerning the nature and extent of the hazard posed by these contaminants, and have failed to timely warn the Carteret community concerning same, such that reasonable members of the Community would be unaware of the presence, nature and extent of Defendants' contamination.

## II.    PARTIES

**<u>Plaintiffs</u>**

14.    Plaintiffs Juan Duarte and Betsy Duarte are residents of Carteret, New Jersey. They have each resided in Carteret New Jersey for greater than two years and they are each less

than 60 years of age. Plaintiffs Juan Duarte and Betsy Duarte own the residential property located at 3-A Salem Avenue, Carteret, New Jersey. As a result of the actions of the Defendants, toxic and hazardous substances have entered onto their property, have contaminated their property, air, land, dwelling and surrounding environment, thereby causing Plaintiffs Juan Duarte and Betsy Duarte to suffer damage to their property and personal finance, loss of the use and enjoyment of their residence, unreasonable and substantial annoyance and inconvenience, including, but not limited to, the inability to fully use, enjoy and recreate on their outdoor spaces; freely perform certain work and repairs on their property; and requiring their property to be dug up, excavated and otherwise disrupted causing inconvenience and disruption. Plaintiffs additionally suffer fear of adverse health effects, including cancer and other serious illness affecting themselves and their infant child, N.D. As a result of the actions of the Defendants, toxic and hazardous substances entered onto their persons, property, air, land, and dwelling, thereby causing Juan Duarte and Betsy Duarte and their minor child N.D. to suffer an increased risk of serious future illness necessitating medical monitoring.

15.    Plaintiff N.D., Infant, by Parents and Natural Guardians Juan Duarte and Betsy Duarte, is a resident of Carteret, New Jersey. Plaintiff N.D., resides at 3-A Salem Avenue, Carteret, New Jersey. Plaintiff N.D. lived within the Class Area as depicted on the attached map for at least two years when she was six years old or less and is currently 20 years old or less. As a result of the actions of the Defendants, toxic and hazardous substances have entered onto N.D.'s property, have contaminated her property, person, air, land, dwelling and surrounding environment, thereby causing Plaintiff N.D. to suffer an increased risk of serious future latent

illness, disease and mental, physical, developmental and cognitive illness and delays necessitating medical monitoring.

16.     Plaintiffs Leroy Nobles and Betty Nobles are residents of Carteret, New Jersey. Plaintiffs Leroy Nobles and Betty Nobles own the residential property located at 3-B Salem Avenue, Carteret, New Jersey. As a result of the actions of the Defendants, toxic and hazardous substances have entered onto their property, have contaminated their property, air, land, dwelling and surrounding environment, thereby causing Plaintiffs Leroy Nobles and Betty Nobles to suffer damage to their property and personal finance, loss of the use and enjoyment of their residence, unreasonable and substantial annoyance and inconvenience, including, but not limited to, the inability to fully use, enjoy and recreate on their outdoor spaces; freely perform certain work and repairs on their property; and requiring their property to be dug up, excavated and otherwise disrupted causing inconvenience and disruption.

17.     More than two-thirds of the members of the proposed Classes are citizens of the State of New Jersey.

18.     No other class action asserting the same or similar factual allegations against any of the defendants has been filed within three years prior to the present action.

**Defendants**

19.     Defendant United States Metals Refining Company ("USMR") is a Delaware corporation with its principal place of business located in New Jersey.

20.     USMR owns or formerly owned certain property located at 300-400 Middlesex Avenue in the Borough of Carteret, Middlesex County, New Jersey, (the "Site") on which USMR operated an industrial plant engaged in, *inter alia*, primary and secondary copper

smelting and metals refining from the early 1900s to approximately 1991 (the "Smelter" or "Defendants' Smelter").

21.     USMR created, generated, disposed, emitted, discharged, handled, stored, stockpiled, transported, and/or released Smelter Contaminants into the Class Area.

22.     Upon information and belief USMR no longer operates as a smelter, refiner or produces goods.  Its business is the remediation of contamination related to its Smelter.  USMR directs, controls and coordinates its business activities from its 63 Washington Avenue Carteret, New Jersey location where it maintains its employees, staff, records, documents, equipment and other materials used in its current business operations.

23.     Upon information and belief USMR manages, controls and contracts with environmental consultants, including ARCADIS, to implement a soil testing and remediation program to ostensibly identify the presence of Smelter Contaminants at properties within the Class Area, to inform the owners of such properties the results of their testing, and remediate those contaminants.

24.     Defendant Freeport Minerals Corporation ("hereafter Minerals") is a Delaware corporation with its principal place of business located at 333 N. Central Ave., Phoenix, Arizona 85004.

25.     Upon information and belief Minerals did not operate the Smelter but manages, controls and/or contracts with environmental consultants, including ARCADIS, to implement a soil testing and remediation program to ostensibly identify the presence of Smelter Contaminants at properties within the Class Area, inform the owners of such properties the results of their testing, and remediate those contaminants.

26.     Defendant Amax Realty Development, Inc. is a Delaware Corporation, with its principle place of business at 300 Middlesex Avenue, Carteret, New Jersey.

27.     Defendant Amax Realty Development, Inc. owned or operated a portion of the Site during which time, Smelter Contaminants were created, generated, disposed, emitted, discharged, handled, stored, stockpiled, and/or transported, and thereby released into the Class Area.

28.     Through their wrongful acts and omissions, including the emission, release, discharge and failure to properly control, curb, contain, properly identify, disclose and/or properly remediate Smelter Contaminants, Defendants have caused, and continue to cause, Smelter Contaminants to enter onto Plaintiffs' and the Class Members' properties, have contaminated their property, air, land, dwelling and surrounding environment, and thereby caused Plaintiffs and the Class Members to suffer damage to their property and personal finance, loss of the use and enjoyment of their property and destruction of their community.  As a result of Defendants' acts and omissions, Smelter Contaminants have unreasonably interfered with Plaintiffs' and the Class Members' exclusive use and enjoyment of their property and remain on their properties causing them significant harm to this day.

29.     Defendants have failed, and/or continue to fail, to prevent the Smelter Contaminants from causing harm, or threatened harm, to the health, safety, and welfare of Plaintiffs as well as Plaintiffs' use and enjoyment of their properties.

### III.    FACTUAL ALLEGATIONS

30.     Plaintiffs and their properties have been exposed to hazardous substances released as a result of Defendants' conduct.

31.     Defendant USMR created, generated, emitted, released, discharged, handled, stored, transported, disposed and/or failed to fully identify, test for, disclose or properly remediate Smelter Contaminants that it released into the Class Area in Carteret, New Jersey.

32.     Defendant Amax emitted, released, discharged, handled, stored, transported, disposed and/or failed to fully identify, test for, disclose or properly remediate Smelter Contaminants in the Class Area in Carteret, New Jersey.

33.     Defendant Minerals failed to fully identify, test for, disclose or properly remediate Smelter Contaminants in the Class Area in Carteret, New Jersey.

34.     These toxic and hazardous Smelter Contaminants scattered so that properties and persons in Carteret were, and continue to be, exposed to hazardous materials.  Plaintiffs have been exposed to toxic and hazardous substances contained within dust, dirt, and/or other releases caused by Defendants.

35.     In the 2016-17 timeframe, Defendants notified Plaintiffs, for the first time, that soil at their residential properties surrounding Defendants' Smelter contain hazardous and toxic substances associated with Defendants' Smelter operations in Carteret. The concentrations exist above safe levels, requiring excavation and removal.  Prior to this time, Plaintiffs were unaware, and had no basis to be aware, of the presence of these contaminants on their properties.

36.     The Smelter Contaminants have been, and continue to be, a source of hazardous substance exposures on and within Plaintiffs' properties and persons.

37.     Wind, erosion, fugitive emissions, atmospheric deposition and other airborne and human releases of the Smelter Contaminants have caused these toxic and hazardous substances to spread within Carteret.  The toxic and hazardous substances were, and are, transported by

wind and other natural and human processes onto and into Plaintiffs' homes, properties and persons.

38.     As a result of Defendants' respective release, discharge, handling, storage, transportation, processing, disposal and failure to remediate toxic and hazardous substances both indoors and outdoors, and to fully identify, test for, disclose or properly remediate smelter Contaminants, Plaintiffs and the Class Members are at an increased risk of developing serious latent disease and other adverse medical conditions.

39.     Large amounts of Defendants' Smelter Contaminants remain today in Carteret and the full nature and extent of the contamination has not been delineated by the Defendants.

40.     Defendants' contamination has impacted Plaintiffs' properties, caused a diminution in their property values, is a blight on Plaintiffs' community and deprives Plaintiffs of their free use and enjoyment of their property.

41.     Smelter Contaminants contains, amongst other elements, arsenic, copper and lead, which have been detected on Plaintiffs' and the Class Members' residential properties.

42.     The United States Environmental Protection Agency ("EPA") classifies arsenic as a known human carcinogen causing lung, liver, kidney, bladder and skin cancer.

43.     The EPA classifies lead as a probable human carcinogen.  In addition, children are particularly susceptible to the toxic effects of lead. Exposure may cause anemia, kidney damage, muscle weakness, brain damage and death. Lead exposure can severely affect a child's mental and physical development and growth.

44.     Defendants' records demonstrate that they knew of the dangers associated with Smelter Contaminants and its impact on Plaintiffs and the Members of the proposed Classes.

45.     Despite this knowledge, Defendants engaged in a campaign to mislead environmental and health regulators and the public of the health risks associated with Smelter Contaminants, then and through the present.

46.     Defendants, intentionally and/or negligently concealed and failed to disclose, and continue to conceal and fail to disclose, to Plaintiffs, Class Members and/or public agencies, material facts concerning the nature, extent, magnitude, and effects of the exposure of Plaintiffs, Class Members and/or their property, to these toxic and hazardous substances.

47.     Defendants knew and/or reasonably should have known that Plaintiffs, Class Members and/or their properties, would be exposed to hazardous materials and contaminants. Defendants knew and understood, and/or reasonably should have known and understood, that their concealment of such information would subject and continue to subject Plaintiffs, Class Members and/or their property in Carteret, to continued exposure to hazardous materials and contaminants.

48.     Plaintiffs and the Class Members reasonably believed that the air, land and soil in the Class Areas did not pose any potential health hazard.

49.     Plaintiffs and the Class Members have each been exposed to lead, arsenic and other Smelter Contaminants due to Defendants' negligence in handling, storing, use, disposal and/or failure to properly identify, disclose and/or remediate said hazardous substances.

50.     As a proximate result of the exposure to lead, arsenic and other Smelter Contaminants, Plaintiffs and the Class Members have a significantly increased risk of contracting serious latent diseases, including, without limitation, various forms of cancer, developmental delays and cognitive, mental and physical impairments.

51.     Plaintiffs and the Class Members seek redress and damages for: economic losses, such loss of property value; medical monitoring, punitive damages and other damages as the result of the carelessness, recklessness, negligence and willful and wanton violation of law by the Defendants.

## IV.    CLASS ALLEGATIONS

52.     This Class Action is being filed by the Plaintiffs, pursuant to Fed. R. Civ. P. 23, on behalf of themselves and others similarly situated.

53.     Plaintiffs seek to certify the following classes defined as:

**Property Damages Class:** Current residents of New Jersey who, on or after the date of the filing of their Complaint, own or owned any real property identified as Residential Property located within the area identified on the attached map. The Class Area is generally bounded by Carteret Street, Rosewood Lane, Jackson Ave., Varga Drive and Monroe Ave. to the West; Peter J. Sica Industrial Highway to the North and East; and Middlesex Ave. and Prologis Way to the South. The Class includes Residential Properties located on both sides of the boundary streets contained in the class definition.

**Lead Exposure Medical Monitoring Class**: Current residents of New Jersey who lived within the Class Area as depicted on the attached map for at least one year when they were six years old or less and are currently 20 years old or less or;

**Carcinogen Exposure Medical Monitoring Class**: Current residents of New Jersey who lived within the Class Area as depicted on the attached map for at least two years and are currently 60 years old or less.

54.     To the extent revealed by discovery and investigation, there may be additional appropriate classes and/or subclasses from the above class definition which is broader and/or narrower in time or scope.

55.    Excluded from the classes are Defendants' officers, directors, agents, employees and members of their immediate families; and the judicial officers to whom this case is assigned, their staff, and the members of their immediate families.

56.    Plaintiffs, members of the Classes and/or their property have been exposed to and continue to be exposed to toxic and hazardous substances at, around, and emanating from Defendants' Smelter.

57.    This Court may maintain these claims as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4).

58.    The members within each Class are so numerous that joinder of all members is impractical.

59.    The number of properties located in the Property Damage Class Area exceeds 100 and, therefore, the number of Class members likely also exceeds 100 people, in satisfaction of Fed. R. Civ. P. 23(a)(1).

60.    The number of persons in the Lead Exposure Medical Monitoring Class who have been exposed to hazardous substances exceeds 100 in satisfaction of Fed. R. Civ. P. 23(a)(1).

61.    The number of persons in the Carcinogen Exposure Monitoring Class who have been exposed to hazardous substances exceeds 100 in satisfaction of Fed. R. Civ. P. 23 (a)(1).

62.    There are common questions of law and fact that affect the rights of every member of the respective Classes, and the types of relief sought are common to every member of the respective Classes.  The same conduct by Defendants has injured each respective Class Member.  Common questions of law and/or fact common to the respective Classes include, but are not limited to:

a.    Whether Defendants USMR and Amax, through their acts or omissions, proximately caused Smelter Contaminants to be released into the Class Area;

b.    Whether Defendants were negligent in their handling, storing, transporting, use, release, discharge, emission, disposal and/or failure to properly investigate, remediate and abate lead, arsenic and other Smelter Contaminants.

c.    Whether Defendants violated applicable standards concerning handling, storing, transporting, use, release, discharge, emission, disposal and/or failure to investigate and remediate lead, arsenic and other Smelter Contaminants.

d.    Whether Defendants USMR and Amax's releasing, discharging, emitting or depositing lead, arsenic and other Smelter Contaminants onto Plaintiffs' properties, or their failure to remove or abate such contamination from Plaintiffs' properties, constitutes a private nuisance;

e.    Whether Defendants USMR and Amax's releasing, discharging, emitting or depositing lead, arsenic and other Smelter Contaminants onto Plaintiffs' properties, or their failure to remove such contamination, constitutes a trespass;

f.    Whether Defendants USMR and Amax's proximately caused lead, arsenic and other Smelter Contaminants to be released into the environment, where Plaintiffs' properties have been exposed to such contaminants;

g.    Whether, as a proximate result of the exposure to lead, arsenic and other Smelter Contaminants, Plaintiffs and the members of the Medical Monitoring Classes have an increased risk of contracting serious latent diseases or other serious illness;

h.    Whether the increased risk of disease makes periodic medical examinations and screening of the Plaintiffs and members of the Medical Monitoring Classes reasonable;

i.    Whether a monitoring procedure exists that makes early detection of the diseases associated with exposure to lead, arsenic and other contamination related to Smelter Contaminants possible;

j.    Whether the prescribed monitoring regimen is reasonable according to contemporary medical and scientific principles; and

        k.    Whether, as a proximate result of the exposure to lead, arsenic and other Smelter Contaminants, Plaintiffs' properties and the properties of the members of the Property Damage Class have suffered a loss in value.

63.    These questions of law and/or fact are common to the respective Classes and predominate over any questions affecting only individual class members.

64.    The claims of Plaintiffs Juan Duarte, Betsy Duarte, their infant child N.D., Leroy Nobles and Betty Nobles are typical of the claims of their respective Classes as required by Fed. R. Civ. P. 23(a)(3), in that all claims are based upon the same factual and legal theories. It is the same conduct by each respective Defendant that has injured each member of the respective Classes. The principal issue in this matter involves Defendants' conduct in wrongfully handling, storing, transporting, using, releasing, discharging, emitting, disposing and/or failing to remediate their toxic and hazardous Smelter Contaminants related to their operations in Carteret which impacts all members of the respective Classes.

65.    Plaintiffs will fairly and adequately represent and protect the interests of the respective Classes, as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs have retained counsel with substantial experience in the prosecution of class actions and environmental litigation in New Jersey. Plaintiffs and their counsel are committed to the vigorous prosecution of this action on behalf of the Classes and have the financial resources to do so. Neither Plaintiffs nor counsel has any interest adverse to those of the Classes.

66.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants and/or because adjudications respecting individual members of the Classes would, as

a practical matter, be dispositive of the interests of the other members or would risk substantially impairing or impending their ability to prosecute their interests.

67.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to all Members of the respective Classes, thereby making relief in the form of an injunction requiring Defendants to abate the nuisance and for the prompt and thorough investigation, identification, excavation and removal of all Smelter Contaminants, from the properties of plaintiffs and the Members of the Classes appropriate.

68.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to all Members of the Medical Monitoring Classes, thereby making relief in the form of an injunction requiring Defendants to establish a fund for the costs of medical monitoring appropriate.

69.     In addition, Plaintiffs and the Medical Monitoring Class members allege that:

- Plaintiffs and the members of the respective Classes have each been exposed to lead, arsenic and other hazardous materials due to Defendants' negligence in handling, storing, use, disposal and/or failure to properly remediate hazardous substances.

- Lead, Arsenic and other Smelter Contaminants are hazardous substances.

- The Plaintiffs' and the Class Members' exposure to lead, arsenic and other hazardous substances was caused by Defendants' negligence in the handling, storing, use, disposal and/or failure to properly remediate Smelter Contaminants.

- As a proximate result of the exposure to lead, arsenic and other hazardous substances, Plaintiffs and the respective Medical Monitoring Class Members have a significantly increased risk of contracting serious latent diseases, including, without limitation, various forms of cancer, including, but not limited to, lung, liver, bladder and kidney cancer, leukemia, lymphoma,

Hodgkin's Disease, soft tissue sarcomas, Multiple Myeloma, brain damage and cognitive, behavioral, mental, physical, developmental and growth delays.

• A monitoring procedure exists that makes early detection of the diseases possible.

• The prescribed monitoring regiment is different from that normally recommended in the absence of exposure to arsenic, lead and other hazardous materials contained in Smelter Contaminants to which plaintiffs and Class Members were exposed.

• The prescribed monitoring regimen is reasonable according to contemporary medical and scientific principles.

70. Plaintiffs and members of the respective Classes have suffered, and will continue to suffer, harm and damages as a result of Defendant's unlafwful and wrongful conduct.

71. A class action is superior to other available methods for the fair and efficient adjudication of the controversy under Fed. R. Civ. P. 23(b)(3). Absent a class action, most members of the Classes likely would find the cost of litigating their claims to be prohibitive, and will have no effective remedy at law. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

72. Class certification is also appropriate because this Court can designate particular claims or issues for class-wide treatment and may designate one or more subclasses pursuant to Fed. R. Civ. P. 23(c)(4).

73. Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of each putative class who has suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts

and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all putative class members.

74.    No unusual difficulties are likely to be encountered in the management of this action as a class action.

75.    Plaintiffs and the members of the Classes were not in any way responsible for the Smelter Contaminants discharged in Carteret, New Jersey.

## V.  COUNTS

### COUNT I
### Private Nuisance

(USMR and Amax only)

76.    Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

77.    Defendants' USMR and Amax's past, present and/or continuing acts and/or omissions constitute a nuisance in that Defendants used, have used, and/or continue to use their property in a manner that has resulted in an unreasonable burden and interference on the Plaintiffs and the Class Members in the form of personal harm, inconvenience, annoyance and discomfort incidental to exposure to lead, arsenic and other Smelter Contaminants.

78.    Defendants' past, present and/or continuing activities, acts and/or omissions at and near the Smelter constitute a private nuisance resulting in unreasonable interference with Plaintiffs' and the Class Members' right to the exclusive use and enjoyment of their properties through the invasion of hazardous and toxic substances contaminating their properties and the surrounding environment, thereby exposing Plaintiffs and the Class Members to hazardous and

toxic substances and substantially interfering with Plaintiffs' and the Class Members' free use and enjoyment of their properties.

79.    Defendants' past, present and/or continuing acts and/or omissions, resulting in the deposition of Smelter Contaminants onto and/or failure to remove or properly investigate and remediate lead, arsenic and other Smelter Contaminants, and allowing such contamination to remain on Plaintiffs' properties and surrounding environment, constitutes a nuisance in that Defendants have used their property in a manner that has unreasonably interfered with Plaintiffs' and the Class Members' property interests, health and safety.

80.    Defendants' contamination presently impacts Plaintiffs, causes a diminution in their property values, is a blight on Plaintiffs' community, causes annoyance, interference and inconvenience and deprives Plaintiffs of their free use and enjoyment of their property, including, but not limited to, the inability to fully use, enjoy and recreate on their outdoor spaces, freely perform certain work and repairs on their property; and requiring their property to be dug up, excavated, handled with extreme caution and otherwise disrupted causing inconvenience and disruption.  Plaintiffs additionally suffer fear of adverse health effects, including cancer and other latent, serious illness, including childhood health issues, as described above.

81.    In the alternative, Defendants' disposal of and/or failure to remove lead, arsenic and other Smelter Contaminants from residential areas violates applicable standards and/or regulations, which constitutes a nuisance *per se*.

82.    Defendants knew that the invasion of contaminants onto Plaintiffs' and the Class Members' properties was substantially certain to result from their actions and/or omissions, as aforesaid.

83.    This interference with Plaintiffs' and the Class Members' use and enjoyment of their property is substantial, unreasonable, unwarranted and unlawful.

84.    As a result of Defendants' wrongful acts and omissions, Plaintiffs and the Class Members have suffered exposure to hazardous substances, annoyance, inconvenience, discomfort, displacement, fear of adverse health effects and economic loss for which damages and medical monitoring are justified.

85.    As a direct and proximate result of Defendants' misconduct, Plaintiffs and the members of the Classes have suffered and continue to suffer economic losses and the loss of value to their property and other damages.

86.    Defendants are jointly and severally liable to Plaintiffs and the members of the Classes for their acts and/or omissions.

87.    The nuisance that Defendants created is a continuing nuisance in that it has continued and remains unabated.

88.    Separate and apart from acting negligently, at all relevant times the Defendants caused injury and damages to the Plaintiffs, the Classes and/or their property through acts and omissions actuated by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

89.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to lead, arsenic and other Smelter Contaminants, individually and together, released, discharged, stored, handled, processed, disposed, emitted and failed to properly investigate and remediate said contaminants from the surrounding environment, while failing to warn residents of the dangers of such contaminants.

90.     Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to such contaminants, and despite orders from health and environmental regulators, masked the true extent of contamination, thereby enabling the Defendants to avoid taking all appropriate steps to properly remediate lead, arsenic and other Smelter Contaminants, or to mitigate dangers created by their release, emissions and discharge, in the Class Areas.

91.     Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to lead, arsenic and other Smelter Contaminants, and despite orders and warnings from health and environmental regulators, failed to properly remediate such contamination in Carteret.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly, and severally, for compensatory damages, the implementation of a medical testing and monitoring program for those exposed to toxic and/or hazardous substances, the implementation of a property inspection and remediation program, punitive damages, interest, costs of suit as provided for by law, and such other relief as the Court may deem just and proper.

### COUNT II
### Strict Liability

(All Defendants)

92.     Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

93.     Defendants, by generating, discharging, releasing, emitting and dispersing Smelter Contaminants into the Class Areas and by failing to properly remediate and allowing those contaminants and pollutants to remain in the environment, and/or concealing knowledge of

21

same, have engaged in abnormally dangerous, ultrahazardous, and inherently or intrinsically dangerous activities for which they are strictly liable to the Plaintiffs and the Class Members.

94.    Defendants' activities pose a high degree of risk of harm to Plaintiffs. The likelihood that the harm that results from the Defendants' activities will be great is based on the fact that the contaminants released into the Class Area from Defendants' Smelter contain highly toxic arsenic, lead, and other Smelter Contaminants; that these contaminants present serious health risks (including cancer and mental, physical, behavioral and developmental delays); and that Defendants' acts and omissions continue to cause contamination in soil, dust and air at levels higher than acceptable limits.

95.    The risks posed by Defendants' release and failure to properly investigate, delineate and remediate Smelter Contaminants in a densely populated urban area could not be eliminated by the exercise of reasonable care and no safe way exists to dispose of toxic waste by simply releasing it onto land in such a densely populated urban area.  There is no safe way to dispose of Smelter Contaminants in the Class Areas, which is located in a densely-populated urban area, given the capacity of arsenic, lead and other Smelter Contaminants to cause cancer and other serious adverse health effects in humans.  The serious health and environmental risks posed by the Smelter Contaminants that Defendants disposed of in such a densely populated urban area clearly could not have been eliminated by the exercise of reasonable care on the part of Defendants.

96.    Defendants' release, and failure to properly investigate, delineate, remediate and warn Plaintiffs and the Class Members about the Smelter Contaminants in the Class Areas was neither a matter of common usage nor appropriate to the place where it was carried out.

97.     The discharge of dangerous toxic waste into the environment is a critical societal problem in New Jersey, and thus, the value of Defendants' activities, if any, is substantially outweighed by the serious health and environmental problems caused by them.

98.     As a direct and proximate result of Defendants' misconduct as set forth herein, Plaintiffs and the members of the classes have suffered and continue to suffer enhanced risk of future personal injury; economic losses, such as costs of medical monitoring; the loss of value to their property; and other damages as set forth herein.

99.     Defendants are jointly and severally liable to Plaintiffs and the Class Members for their acts and/or omissions.

100.    Separate and apart from acting negligently, at all relevant times the Defendants caused injury and damages to the Plaintiffs and/or their property through acts and omissions actuated by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

101.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to lead, arsenic and other Smelter Contaminants, individually and together, released, discharged, stored, handled, processed, disposed, emitted and failed to properly investigate and remediate said contaminants from the surrounding environment, while failing to warn residents of the dangers of such contaminants.

102.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to such contaminants, and despite orders from health and environmental regulators, masked the true extent of contamination, thereby enabling the Defendants to avoid taking all appropriate steps to properly remediate lead, arsenic and other

Smelter Contaminants, or to mitigate dangers created by their release, emissions and discharge, in the Class Areas.

103.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to lead, arsenic and other Smelter Contaminants, and despite orders and warnings from health and environmental regulators, failed to properly remediate such contamination in Carteret.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly, and severally, for compensatory damages, the implementation of a medical testing and monitoring program for those exposed to toxic and/or hazardous substances, the implementation of a property inspection and remediation program, punitive damages, interest, costs of suit as provided for by law, and such other relief as the Court may deem just and proper.

## COUNT III
### Trespass

(Defendants USMR and Amax only)

104.    Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

105.    Defendants USMR and Amax's wrongful conduct as set forth above resulted in the direct physical invasion of Plaintiffs' and the Class Members' properties by hazardous and toxic substances contaminating their properties and the surrounding environment at concentrations above safe levels, requiring excavation and removal.

106.    The hazardous and toxic substances continue to contaminate Plaintiffs' and the Class Members' properties, thereby exposing Plaintiffs and the Class Members to the hazardous and toxic substances.

107.    The invasion and exposure is ongoing and continuous.

108.    The presence of the hazardous and toxic constituents on Plaintiffs' and the Class Members' properties is unauthorized and unreasonable.

109.    The Defendants have not sought nor obtained Plaintiffs' and the Class Members' consent to place or store their substances and wastes on Plaintiffs' and the Class Members' property.

110.    As a direct and proximate result of Defendants' misconduct as set forth herein, Plaintiffs and the members of the classes have suffered and continue to suffer enhanced risk of future personal injury and serious latent illness; economic losses, such as costs of medical monitoring, loss of use and enjoyment of their property; annoyance, discomfort and inconvenience; the loss of value to their property and other damages.

111.    Defendants are jointly and severally liable to Plaintiffs and the Class Members for their acts and/or omissions.

112.    Separate and apart from acting negligently, at all relevant times the Defendants caused injury and damages to the Plaintiffs and/or their property through acts and omissions actuated by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

113.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to lead, arsenic and other Smelter Contaminants, individually and together, released, discharged, stored, handled, processed, disposed, emitted and failed to properly investigate and remediate said contaminants from the surrounding environment, while failing to warn residents of the dangers of such contaminants.

114.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to such contaminants, and despite orders from health and environmental regulators, masked the true extent of contamination, thereby enabling the Defendants to avoid taking all appropriate steps to properly remediate lead, arsenic and other Smelter Contaminants, or to mitigate dangers created by their release, emissions and discharge, in the Class Areas.

115.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to lead, arsenic and other Smelter Contaminants, and despite orders and warnings from health and environmental regulators, failed to properly remediate such contamination in Carteret.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly, and severally, for compensatory damages, the implementation of a medical testing and monitoring program for those exposed to toxic and/or hazardous substances, the implementation of a property inspection and remediation program, punitive damages, interest, costs of suit as provided for by law, and such other relief as the Court may deem just and proper.

## COUNT IV
### Battery

(All Defendants)

116.    Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

117.    Defendants, by intentionally generating, discharging, releasing, transporting, disposing, emitting, failing to properly remediate and allowing the discharge of hazardous and toxic substances, and/or concealing knowledge of same, intentionally and willfully caused a

26

direct, harmful and/or offensive contact with Plaintiffs and the Class Members and thereby committed battery upon the Plaintiffs and the Class Members.

118.    As a direct and proximate result of Defendants' misconduct as set forth herein, Plaintiffs and the members of the classes have suffered and continue to suffer enhanced risk of future personal injury and serious latent disease; economic losses, such as costs of medical monitoring and the loss of value to their property and other damages.

119.    Defendants are jointly and severally liable to Plaintiffs and the Class Members for their acts and/or omissions.

120.    Separate and apart from acting negligently, at all relevant times the Defendants caused injury and damages to the Plaintiffs and/or their property through acts and omissions actuated by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

121.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to lead, arsenic and other Smelter Contaminants, individually and together, released, discharged, stored, handled, processed, disposed, emitted and failed to properly investigate and remediate said contaminants from the surrounding environment, while failing to warn residents of the dangers of such contaminants.

122.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to such contaminants, and despite orders from health and environmental regulators, masked the true extent of contamination, thereby enabling the Defendants to avoid taking all appropriate steps to properly remediate lead, arsenic and other

Smelter Contaminants, or to mitigate dangers created by their release, emissions and discharge, in the Class Areas.

123.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to lead, arsenic and other Smelter Contaminants, and despite orders and warnings from health and environmental regulators, failed to properly remediate such contamination in Carteret.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly, and severally, for compensatory damages, the implementation of a medical testing and monitoring program for those exposed to toxic and/or hazardous substances, the implementation of a property inspection and remediation program, punitive damages, interest, costs of suit as provided for by law, and such other relief as the Court may deem just and proper.

## COUNT V
## Negligence

## (All Defendants)

124.    Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

125.    Defendants, at all times material hereto, acted through their respective officers, employees, and agents, who in turn acted in the scope of their authority and employment in furtherance of the business of Defendants.

126.    As a direct and proximate result of Defendants' acts and omissions, as aforesaid, extensive contamination has been documented on Plaintiffs' property and in the Class Areas.

127.    At all relevant times, Defendants knew or should have known that the hazardous and toxic substances discharged were contaminating the surface and subsurface of the Class

28

Areas and would eventually enter Plaintiffs' and Class Members' persons, properties, air, and surrounding environment.

128.    At all relevant times, Defendants failed to safely sample for, identify and properly remove and dispose the aforementioned Smelter Contaminants, and failed to advise or warn Plaintiffs and the Class Members of the dangers emanating from the discharge of hazardous and toxic substances into the soil, air, dust and surrounding environment.

129.    Defendants failed to use reasonable care to safeguard those residing in the Class Areas from injury or property damage.

130.    As a direct and proximate result of Defendants' misconduct as set forth herein, Plaintiff sand the members of the classes have suffered and continue to suffer enhanced risk of future personal injury and serious latent illness; economic losses, such as costs of medical monitoring, loss of use and enjoyment of their property; annoyance, discomfort and inconvenience; the loss of value to their property and other damages.

131.    Defendants are jointly and severally liable to Plaintiffs and the Class members for their acts and/or omissions.

132.    Separate and apart from acting negligently, at all relevant times the Defendants caused injury and damages to the Plaintiffs and/or their property through acts and omissions actuated by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

133.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to lead, arsenic and other Smelter Contaminants, individually and together, released, discharged, stored, handled, processed, disposed, emitted and failed to

properly investigate and remediate said contaminants from the surrounding environment, while failing to warn residents of the dangers of such contaminants.

134.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to such contaminants, and despite orders from health and environmental regulators, masked the true extent of contamination, thereby enabling the Defendants to avoid taking all appropriate steps to properly remediate lead, arsenic and other Smelter Contaminants, or to mitigate dangers created by their release, emissions and discharge, in the Class Areas.

135.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to lead, arsenic and other Smelter Contaminants, and despite orders and warnings from health and environmental regulators, failed to properly remediate such contamination in Carteret.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly, and severally, for compensatory damages, the implementation of a medical testing and monitoring program for those exposed to toxic and/or hazardous substances, the implementation of a property inspection and remediation program, punitive damages, interest, costs of suit as provided for by law, and such other relief as the Court may deem just and proper.

## JURY TRIAL DEMAND AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and the members of the Classes request that the Court enter an order or judgment against Defendants as follows:

A.    Enter an Order pursuant to Fed. R. Civ. P. 23 permitting this action to be maintained as a class action, appointing Plaintiffs as the representatives of the Classes and Plaintiffs' counsel as counsel for the Classes;

B.      Enter an Order requiring the Defendants to bear the costs of medical monitoring, including, but not limited to, testing, examination, preventative and diagnostic screening for conditions that can result from, or potentially result from, exposure to lead, arsenic and other Smelter Contaminants;

C.      Enter an Order requiring the Defendants to bear the costs of a property inspection and remediation program, including, but not limited to, testing, examination, and remediation of lead, arsenic and other Smelter Contaminants;

D.      Enter an Order requiring the Defendants to bear the cost of publication to Plaintiffs and Class Members of approved guidelines and procedures for medical screening and monitoring of Plaintiffs and Class Members, the content, form and manner of such publication to be approved by the Court;

E.      Enter judgment in favor of Plaintiffs and Class Members against Defendants for costs incurred in medical monitoring, loss of property value and for all other relief, in an amount to be proven at trial, as to which they may be entitled, including interest, expert fees and costs of this suit;

F.      Award prejudgment and post-judgment interest as provided by law;

G.      Award punitive damages; and

H.      Such other relief as this Court deems necessary, just and proper.

Plaintiffs demand a trial by jury as to all claims so triable in this action.


Dated: December 27, 2017

By:     /s/ Steven J. German
          Steven J. German, Esq.

**GERMAN RUBENSTEIN LLP**
Steven J. German, Esq.

31

*Trial counsel for Plaintiffs and the Classes*
Joel M. Rubenstein, Esq.
19 West 44th Street, Suite 1500
New York, NY 10036
Telephone: (212) 704-2020
Facsimile : (212) 704-2077

**VLASAC & SHMARUK, LLC**
Boris Shmaruk, Esq.
John M. Vlasac, Jr., Esq.
467 Middlesex Avenue
Metuchen, New Jersey 08840
(732) 494-3600

**NIDEL & NACE PLLC**
Christopher T. Nidel
(*pro hac vice* admission to be requested)
1615 New Hampshire Ave., NW
Washington, DC 20009
202-558-2030

