**CLOSED**

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUAN DUARTE, BETSY DUARTE, on Behalf of Themselves and all Others Similarly Situated, | ) ) ) |
| Plaintiffs, | ) Civil Action No. 2:17-cv-01624-EP-MAH |
| vs. | ) ) |
| UNITED STATES METALS REFINING COMPANY; FREEPORT MINERALS CORPORATION; FREEPORT-MCMORAN INC., and AMAX REALTY DEVELOPMENT, INC., | ) Honorable Evelyn Padin ) Honorable Michael A. Hammer ) ) ) ) ) |
| Defendants. | ) ) ) |

## ORDER APPROVING CLASS ACTION SETTLEMENT AND FINAL JUDGMENT

On this 26th day of July, 2023, the Court considered the Plaintiffs' and Defendants' Brief in Support of Final Approval of Class Action Settlement ("Joint Motion for Final Approval") and Class Counsel's Motion in Support of Award of Costs and Fees ("Fee Application"). The Court also considered all objections filed, whether withdrawn or not, in the context of considering the Joint Motion for Final Approval and the Fee Application. The Court also held a hearing on the record on July 26, 2023, and for the reasons set forth on the record on that date, and for good cause shown;

The Joint Motion for Final Approval requests (a) certification of the class for settlement purposes only; (b) final approval of the settlement preliminarily approved by this Court on April 19, 2023 (D.E. 276); and (c) entry of final judgment and dismissal with prejudice of Plaintiffs' and Settlement Class Members' claims against Released Persons (as that term is defined in the Class Settlement Agreement and General Release). Settlement Class Members and Settlement Class Counsel have requested approval of Class Counsel's Fee Application, which includes Settlement Class Representatives' fee award request.

WHEREAS, Plaintiffs and Defendants in the above-captioned class action (the "Action") entered into a Class Action Settlement Agreement (the "Settlement Agreement"), as of March 27, 2023, (terms capitalized herein and not otherwise defined shall have the meanings ascribed to them in the Settlement Agreement);

WHEREAS, Plaintiffs in the Action moved under Federal Rule of Civil Procedure 23(b) for an order certifying the class for settlement purposes, and Plaintiffs and Defendants in the Action moved under Rule 23(e) for an order preliminarily approving the proposed settlement of the Settlement Class Members' claims in accordance with the Settlement Agreement and approving the form and plan of notice as set forth in the Settlement Agreement;

WHEREAS, in its Order entered on April 19, 2023 (D.E. 276) (the "Preliminary Approval Order"), the Court provisionally ordered that this Action may be settled as a class action on behalf of the following settlement class:

> **Property Damages Class:** All persons who own or owned any Residential Property (as that term is defined by N.J. Admin. Code § 18:12-2.2(b) and includes 'dwelling house[s] and the lot or parcel of land on which the dwelling house is situated [where the] dwelling is functionally designed for use and enjoyment by not more than four families and includes residential condominiums') and (ii) vacant lots zoned for residential use in each case located within the geographical boundary defined by the map below (the "Class Area") at any time during the Class Period, but excluding (i) properties owned by the Defendants or employees of Defendants, and (ii) properties owned by any federal, state, or local government or any subdivision of such government entities. The Class Area is generally bounded by Peter J. Sica Industrial Highway to the East, Romanowski Street to the North-East Cypress Street to the North, Arthur and East Grant Streets to the West, and Middlesex Ave. to the South. The Class includes Residential Properties located on both sides of the boundary streets. The Class Period is from January 30, 2017 to March 27, 2023.



WHEREAS, the Preliminary Approval Order also approved the forms of notice of the Settlement to potential members of the Settlement Class and directed that appropriate notice of the Settlement be given to potential members of the Settlement Class;

WHEREAS, in accordance with the Settlement Agreement and the Preliminary Approval Order: (1) the Settlement Administrator caused to be mailed to potential members of the Settlement Class the Notice of Proposed Class Action Settlement ("Individual Notice") on May 10, 2023, caused to be published the Notice of Proposed Class Action Settlement ("Publication Notice"), and published a copy of the Notice on a website maintained by the Claims Administrator; (2) a declaration of Mailing the Notice and Publication of the Publication Notice was filed with the Court prior to this hearing; and (3) the declaration of Mailing and Publication filed with this Court demonstrates compliance with the Preliminary Approval Order with respect

to the Individual Notice and the Publication Notice and, further, that the best notice practicable under the circumstances was, in fact, given;

WHEREAS, on July 26, 2023, this Court held a hearing on whether (1) the Settlement Agreement is fair, reasonable, adequate and in the best interests of the Settlement Class Members, and (2) the Settlement Class Counsel's application for attorneys' fees and expenses and Class Representatives' incentive awards are fair and reasonable (the "Fairness Hearing");

WHEREAS, all Settlement Class Members had the absolute right to opt out and pursue an individual lawsuit against the Released Persons;

WHEREAS, any Settlement Class Member who failed to request exclusion under the terms set forth in the notice campaign voluntarily waived the right to pursue an independent remedy against the Released Persons;

WHEREAS, the notice campaign advised Settlement Class Members of the method by which they could properly file objections and request to be heard at the Fairness Hearing; and

WHEREAS, based upon the foregoing, having heard the statements of counsel for the Parties and of such persons as chose to appear at the Fairness Hearing; having considered all of the files, records, and proceedings in the Action, the benefits to the Settlement Class Members under the Settlement Agreement, and the risks, complexity, expense, and probable duration of further litigation; and being fully advised in the premises,

IT IS HEREBY ORDERED AND ADJUDGED THAT:

1. The Court has subject-matter jurisdiction over the subject matter of the Action, and personal jurisdiction over the Plaintiffs, the Settlement Class Members, and Defendants.

2. The Settlement Agreement has been filed with the Court and made available to Settlement Class Members through the website maintained by the Settlement Administrator. The Settlement Agreement is incorporated herein by reference.

3. The Settlement Class Representatives and Settlement Class Counsel fairly and adequately represent the interests of the Settlement Class Members in connection with the Settlement Agreement.

4. The Settlement Agreement is the product of good-faith, arm's-length negotiations by the Plaintiffs, Settlement Class Counsel, and Defendants and their counsel, and the representatives of the Plaintiffs and Defendants were represented by capable and experienced counsel. In addition, the Court finds that approval of the Agreement and the proposed Settlement embodied therein will result in substantial savings in time and resources to the Court and the litigants and will further the interests of justice. Further, the Court finds that the Agreement is the product of extensive litigation discovery and motion practice over more than 5 years that has effectively informed the litigants of the strengths and weaknesses of their respective litigation positions.

5. The form, content, and method of dissemination of the notice given to potential members of the Settlement Class, including both published notice and individual notice to all potential members of the Settlement Classes who could be identified through reasonable effort, were adequate and reasonable and constituted the best notice practicable under the circumstances.

6. The Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Class Members, and is approved in all respects, and the parties are directed to perform and satisfy the terms and conditions of the Settlement Agreement. The Court has evaluated the nine-factor test prescribed by the Third Circuit in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), and found that all nine factors support settlement approval as discussed below:

a. <u>The complexity, expense and likely duration of litigation supports approval</u>.

The first *Girsh* factor captures "the probable costs, in both time and money, of continued litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (internal quotation marks and citation omitted). The presumption in favor of voluntary settlements is "especially strong" in complex class actions "where substantial judicial resources can be conserved by avoiding formal litigation." *Id*. at 784 (internal quotation marks and citation omitted). This case involves disputes over very complex scientific and other factual issues. As illustrated by the briefing on class certification, key areas of dispute involve highly technical areas of environmental science, geochemistry, toxicology, epidemiology, air modeling, and property valuation, among others. These complex scientific disputes are implicated in the evaluation of over twelve hundred residential properties included within the proposed settlement Class.

Moreover, although the Parties have engaged in five years of fact and expert discovery, continuing to litigate this case through a heavily contested class certification motion, potential appeals of the Court's rulings on class certification and *Daubert* motions, summary judgment, and trial is likely to be "a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998). This factor supports settlement approval.

b. <u>The reaction of the class to the settlement supports approval</u>.

The second *Girsh* factor requires the Court to examine "the reaction of the class to the settlement." *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006) (citation omitted). "In an effort to measure the class's own reaction to the settlement's terms

directly, courts look to the number and vociferousness of the objectors." *General Motors*, 55 F.3d at 812. When considering the reaction of the class, "[t]he vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001). Thus, in *Yong Soon Oh v. AT & T Corp.*, 225 F.R.D. 142, 147 (D.N.J. 2004), three objections was considered "extremely minimal" as compared with the estimated thousands of class members, and, as such, "weigh[ed] in favor of approving the Proposed Settlement." *Id.*; *see also In re Ins. Brokerage Antitrust Litig.*, No. CIV.A. 04-5184 (GEB), 2007 WL 2589950, at *5 (D.N.J. Sept. 4, 2007) *aff'd sub nom. In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009) (approving settlement where only two class members filed objections and noting that such a small number of objections strongly weighs in favor of approval); *Pet Food Products*, 629 F.3d at 351 (second *Girsh* factor satisfied where over 9,000 claims had been received as compared to only 114 exclusion requests and 28 objections).

Here, the reaction of the class has been favorable. Out of a potential 1,205 class properties, there was only one (1) opt-out request and one (1) written objection. The one objection is not relevant to the claims that are included within the proposed Class settlement, because the objection focused on the potential for future personal injury or medical monitoring claims, which are not being released. Thus, even this one objection does not actually criticize the fairness of the proposed settlement before the Court, but rather illustrates its fairness in expressly excluding personal injury and medical monitoring claims.

Moreover, at least one claim has been submitted for 818 of the Eligible (class) Properties, representing a per property response rate of over 68%. Courts in the Circuit have found participation rates above 25% to be adequate and to weigh in favor of approval. *See, e.g., Ward v. Flagship Credit Acceptance LLC*, No. 17-2069, 2020 U.S. Dist. LEXIS 25612, at *36 (E.D. Pa. Feb. 13, 2020) (20.5% participation rate); *Taha v. Bucks County Pa.*, No. 12-6867, 2020 U.S. Dist. LEXIS 222655, at *12 (E.D. Pa. Nov. 30, 2020) (25% claims rate suggested that the process was effective and weighed in favor of approval). The participation rate in the *Duarte* settlement far exceeds this bench mark and suggests strong approval among the absent Class Members.

c. <u>The stage of the proceedings and the amount of discovery completed supports approval</u>.

The *Girsh* third factor "captures the degree of case development that class counsel have accomplished prior to settlement." *General Motors*, 55 F.3d at 813. Through this lens, "courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Id*. Thus, "[t]o ensure that a proposed settlement is the product of informed negotiations, there should be an inquiry into the type and amount of discovery the parties have undertaken." *Prudential*, 148 F.3d at 319. There has been extensive discovery, motion practice and the development of expert opinion over the course of five very active years of litigation. Millions of pages of documents have been produced including detailed scientific data on the properties at issue that has been thoroughly evaluated by the Parties' experts. The Parties made two prior efforts at settlement before the third attempt was successful. Both Plaintiffs and Defendants had a well-developed record to evaluate the strengths

and weaknesses of their litigation positions, and this factor supports approval of the proposed Settlement.

d. <u>The risks of establishing liability and damages supports approval</u>.

"The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Prudential*, 148 F.3d at 319. A court considers the risks of establishing liability in order to "examine what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *General Motors*, 55 F.3d at 814. The risks of establishing damages is similar and "attempts to measure the expected value of litigating the action rather than settling it at the current time." *Id*. at 816.

The proposed Settlement resolves contested questions of law and fact that would have been the subject of extensive additional litigation, including several highly technical issues that likely would have come down to a battle of the experts. As part of the class certification briefing, each Party's experts engaged on these disputed issues clarifying both the strengths and weaknesses of each Party's position. For example, key disputes included:

(1)   whether each Plaintiff property is contaminated;

(2)   whether the Smelter is the source of any contamination;

(3)   where multiple sources of contamination are potentially present, how much of the contamination would have come from the Smelter, and relatedly, how much Smelter contamination must be present to impose liability;

9

(4)   whether class members' properties declined in value;

(5)   if so, what is the cause of any decline in value;

(6)   whether Plaintiffs suffered annoyance, discomfort and inconvenience as a result of the presence of any contamination; and

(7)   whether class members' use and enjoyment of their properties has been unreasonably interfered with in any way as a result of the presence of any contamination.

The Court finds that each of these issues presents risks and significant expense to both Plaintiffs and Defendants if this case proceeds through continued litigation, and these considerations support settlement approval.

e.   <u>The risks of maintaining the class action through trial supports approval</u>.

Under Rule 23, the Court may decertify a class at any time during the litigation. Defendants have indicated that they would oppose class certification if the Settlement is rejected and the case is returned to a litigation context. The uncertainty of Plaintiffs' ability to certify a litigation class supports settlement approval.

f.   <u>The final Girsh factors support approval</u>.

"The last two Girsh factors ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322. In order to assess the reasonableness of a proposed settlement seeking monetary relief, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *General Motors*, 55 F.3d at 806 (quoting MANUAL FOR COMPLEX LITIGATION 2d § 30.44, at 252).

      Precise valuation of the Plaintiffs' claims is not possible. What is known with certainty, however, is that under the proposed Settlement each property will be eligible for an award of at least $18,000 to be allocated among the property owners during the Class Period. The Court finds that known recovery is significant, fair, and reasonable for the Release of Plaintiffs' claims in light of the risk of trial.

7. Settlement Class Members have been permitted to make claims for the benefits described in the Settlement Agreement, subject to the conditions and limitations stated herein.

8. The certification of the Settlement Classes, under Rules 23(b)(3) and 23(e), solely for settlement purposes, is hereby confirmed. The Court reaffirms its appointments of Settlement Class Counsel, Settlement Class Representatives, and the Settlement Administrator as set out in the Preliminary Approval Order.

9. The notice, as given, complied with the requirements of Rule 23, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth therein.

10. The notice process provided for a fair and reasonable process for those Eligible Property owners who do not wish to participate in the class settlement to exclude themselves (or "opt-out"). A list of Persons who properly opted out of the class settlement is attached as Exhibit A. These opt out Persons are not bound by this Order and the release of claims described in Paragraph 12. But these opt out Persons are also forever barred from participating in the class settlement benefits including any monetary payments, except that this Judgment does not terminate or modify USMR's obligations under the regulatory cleanup program currently being conducted in Carteret under the oversight of

the NJDEP; nor does it impact any future action by the State of New Jersey in Carteret under applicable environmental laws.

11. Only one class member, Ms. Doreen Stevens, objected to the proposed Settlement as noted above. Ms. Stevens highlighted the following alleged facts in her objection:

    - She had lived in the Class Area much longer than the 6.5 year Class Period, and as a result had allegedly been exposed to emissions resulting from the Smelter longer than the general class.
    - Her mother, father, sister and herself all had cancer, and she is the only survivor.
    - She also worked at the Yard Office at the Smelter while it was still operating and was allegedly exposed to Smelter emissions during that time period.

    Importantly, Ms. Stevens did not object to the fairness of the proposed Settlement benefits in exchange for her release of the property and related economic claims that are included in the proposed Settlement. Instead, her complaints are focused on alleged personal injuries or perhaps the need for medical monitoring arising from alleged exposure to Smelter emissions. But the proposed Settlement's release of claims specifically carves out both personal injury and medical monitoring claims, and as a result, Ms. Stevens' personal injury claims are not impacted by the proposed Settlement. As a result, the Court finds that Ms. Stevens' objection is largely irrelevant to claims resolved by the proposed Settlement and does not contain a persuasive reason for this Court to find the proposed Settlement is unfair or unreasonable.

12. After this Order and Judgment has become Final, and all periods for appeal or request for review have either expired or have been resolved (hereafter "the Final Judgment Date"), Defendants and the Released Persons (as that term is defined in the Settlement

Agreement) shall be released from any and all claims that any Settlement Class Member had, has, or may have in the future including any and all state and federal claims, actions, demands, rights, liabilities, suits, complaints, petitions, causes of action, whether known or unknown, past, present or future, suspected or unsuspected, contingent or non-contingent that arise from facts occurring from the beginning of time through execution of the Settlement Agreement, including all claims for property damages, inconvenience, annoyance, economic loss, and punitive or exemplary damages in connection with such claims arising from or related to the historical operation of the USMR Smelter (as that term is defined in the Settlement Agreement) that is the subject matter of this litigation, the environmental investigations and cleanup conducted by Defendants, and any other property conditions allegedly associated with either historical operation of the USMR Smelter or the Defendants' environmental investigation and cleanup, and specifically include without limitation any claims and causes of action asserted in Plaintiffs' Fifth Amended Complaint (including without limitation private nuisance, trespass, strict liability, and negligence) (collectively the "Released Claims").  The "Released Claims" do not include claims for personal injuries or medical monitoring or punitive or exemplary damages related to such claims.

In connection with this release and to the extent allowed by law, Settlement Class Representatives and Settlement Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the Released Claims.  Nevertheless, it is the intention of the Settlement Class Representatives, the Settlement Class Members, and this Order to fully, finally and

forever settle and release all such Released Claims, and all claims in connection with such Released Claims, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action) and arise from facts occurring from the beginning of time through execution of the Settlement Agreement. In this regard, Settlement Class Representatives and the Settlement Class Members expressly waive, to the extent allowed by law, any potentially applicable statutory or common law provisions that arguably provide otherwise.

13. Upon the Final Judgment Date, all Settlement Class Members (whether or not they file a claim) shall be permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on the Released Claims.

14. The expenses of administering the Settlement Agreement shall be paid to the Settlement Administrator in the manner set forth in the Settlement Agreement. Defendants shall have no liability for any fees or costs incurred by the Settlement Administrator or Settlement Class Counsel except as specifically set out in the Settlement Agreement.

15. Incentive awards to the Settlement Class Representatives in the following amount $15,000 each to Juan Duarte, Betsy Duarte, Betty Nobles, and Leroy Nobles ($60,000 total) are reasonable and are approved. These monies will be paid from the Settlement Fund in the manner set forth in the Settlement Agreement.

16. Attorneys' fees, costs and expenses for Settlement Class Counsel in the following amount $19,900,000 in attorneys' fees and $997,236 in costs are reasonable and are approved. These monies will be paid from the Settlement Fund in the manner set forth in the Settlement Agreement.

17. Any dispute concerning the aggregate amount or allocation of Settlement Class Counsel's attorneys' fees and expense award shall be a separate and severable matter from all other matters in this Final Judgment and from the finality and fairness of the Agreement with the Settlement Class Members. Any appeal of the Settlement Class Counsel attorneys' fees and expense award shall be severed from this final judgment and shall not affect the finality of this judgment as to the settlement and release of the Settlement Class Members' claims against the Released Parties.

18. The Court has considered the potential reversion to USMR based upon non-participating Settlement Class Members and has determined that this potential reversion is reasonable and approved. These monies (if any) will be paid from the Settlement Fund in the manner set forth in the Settlement Agreement.

19. Each Class Member who has submitted a timely and complete Claim and Release Form to the Settlement Administrator shall be paid the amount determined by the Settlement Administrator to be awarded to that Class Member in accordance with the terms of the Settlement Agreement. A Class Member may appeal his, her, or its award by filing a letter of appeal with this Court within thirty (30) days of the entry of this Order or thirty (30) days of a final determination by the Settlement Administrator, whichever is later. Appeals may be made solely on the basis that the Settlement Administrator has incorrectly calculated the amount of the award under the terms of the Settlement Agreement.

20. The Settlement Agreement and this Final Judgment are not deemed admissions of liability or fault by Defendants, or a finding of the validity of any claims in the Litigation or of any wrongdoing or violation of law by Defendants. The Agreement and proposed

Settlement are not a concession by the Parties and neither this Final Judgment nor the Agreement or any other documents, exhibits or materials submitted in furtherance of the Settlement, shall be offered or received in evidence in any action or proceeding in any court, administrative panel or proceeding, or other tribunal, as an admission or concession of liability or wrongdoing of any nature on the part of Defendants.

21. Without in any way affecting the finality of this Final Judgment, the Court hereby reserves its exclusive, general, and continuing jurisdiction over the parties to the Settlement Agreement, including Defendants and all Settlement Class Members, as needed or appropriate in order to administer, supervise, implement, interpret, or enforce the Settlement Agreement in accordance with its terms, including the investment, conservation, protection of settlement funds prior to distribution, and distribution of settlement funds.

22. This Order is a Final Judgment, and is in all respects a final, appealable order, and represents res judicata with respect to the Released Claims of the Settlement Class Members and subsequent property owners in privity with them.

23. Except as expressly stated otherwise in this Order, the Preliminary Approval Order, or the Settlement Agreement, all costs shall be borne by the party incurring them.

IT IS SO

ORDERED: Date:

7/26/23

*s/ Michael A. Hammer*
The Honorable Michael A. Hammer
United States Magistrate Judge